Craig M. Waugh (Bar No. AZ-026524)
craig.waugh@dlapiper.com
Kyle T. Orne (Bar No. AZ-032438)
kyle.orne@dlapiper.com
Madeline A. Cordray (Bar No. AZ-035788)
madeline.cordray@dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
Fax: 480.606.5101
DLAPHX@dlapiper.com

*Attorneys for Plaintiff
Tyler B. Wilson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler B. Wilson, an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Taronis Fuels, Inc., a Delaware corporation, | |
| Defendant. | |

### NATURE OF THE ACTION

1. This action is brought by Tyler B. Wilson ("Mr. Wilson" or "Plaintiff") against Taronis Fuels, Inc. ("Taronis") pursuant to Section 502(a)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for Taronis's failure to pay the requisite amounts to Plaintiff under the terms of the Taronis Fuels, Inc. Executive Severance Plan ("Severance Plan").

2. The Severance Plan provides benefits to participating employees of Taronis in the event they resign for "Good Reason," which includes a sustained and material reduction in job responsibilities and a material breach by Taronis of the participant's employment agreement or any other agreements with Taronis.

3. Plaintiff was employed by Taronis in various officer capacities and as its General Counsel between 2019 and May 6, 2021, and he participated in the Severance Plan throughout that period.

4. Beginning in February 2021, a proxy battle unfolded whereby a group of activist shareholders sought to unseat Taronis's board of directors ("Board") and take their positions based in part on meritless attacks against Mr. Wilson and other Taronis leadership. These public broadsides specifically criticized Mr. Wilson and others' compensation and benefits arrangements, with the activists pledging to find cause to terminate Mr. Wilson and others to avoid severance payments to them.

5. Likely influenced by the proxy battle, Mr. Wilson's job duties were severely curtailed and Taronis stopped making payments of Mr. Wilson's 2020 cash bonus, which had been approved on January 21, 2021 in a unanimous written consent by Board's Compensation Committee and was payable in 52 weekly installments.

6. Mr. Wilson submitted a notice of "Good Reason" on April 5, 2021 pursuant to Section 4.4 of the Severance Plan, detailing a sustained pattern of material reductions in his role as Taronis's General Counsel and material breaches of his agreements with Taronis that included default on the payment of his 2020 bonus. Submission of this notice allowed Taronis 30 days to cure and allowed Mr. Wilson to resign and receive benefits under the Severance Plan absent a timely cure.

7. Soon after Mr. Wilson submitted his Good Reason notice, four-fifths of the incumbent Board members ceded their positions to the activist investors.

8. Taronis disputed the existence of Good Reason and made clear, in writing, that it would not address the issues cited by Mr. Wilson. Mr. Wilson therefore resigned from Taronis on May 6, 2021 and made a claim for benefits under the Severance Agreement. Taronis sent a cursory denial of the claim via the law firm that represented the activist shareholders in their successful bid to take control of the Board. Recognizing the impropriety of that denial under the Severance Plan, Taronis then attempted to "cure" its knee-jerk denial by appointing a Claim Reviewer to independently evaluate the claim.

9. Taronis's purported course correction was a sham. The Claim Reviewer Taronis appointed was one of the Board nominees who campaigned on a platform of avoiding benefit payments to Mr. Wilson – an obvious conflict of interest. The administrative record shows that Taronis's outside counsel prepared a more formal letter denying Mr. Wilson's claim and sent it to the Claim Reviewer to sign and transmit as his own work. When the Claim Reviewer asked for information to understand the investigation that had taken place, Taronis's counsel selected the documents for his claim file, set up a phone call between the Claim Reviewer and past Board members, and scripted the questions the Claim Reviewer should ask them. Taronis's counsel also drafted the denial of Mr. Wilson's appeal and had the Claim Reviewer sign and send it.

10. There is no indication the Claim Reviewer attempted his own investigation of the merits of Mr. Wilson's claim or appeal. And although Mr. Wilson is entitled to everything in the Claim Reviewer's files related to his claim, the Claim Reviewer refused to provide Mr. Wilson with materials Taronis's counsel did not want him to see.

11. In short, the denial of Mr. Wilson's benefit claim was pre-ordained – it was a campaign promise of the Board members in place during the administrative process, including the Claim Reviewer. Mr. Wilson exhausted the administrative process provided under the Severance Plan with Taronis continuing to deny his right to benefits for reasons that cannot be justified under any standard of review. By this action, Mr. Wilson seeks relief under Section 502(a)(1) of ERISA to recover the benefits he has wrongfully been denied by Taronis.

**PARTIES**

12. Plaintiff Tyler B. Wilson is a former employee of Taronis and participant in the Severance Plan.

13. Taronis Fuels, Inc. is a public corporation organized under Delaware law with its principal place of business in Maricopa County, Arizona.

///

///

**JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this action under 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B). In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Courts jurisdiction over actions that arise under the laws of the United States.

15. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because the Severance Plan was administered in Arizona and its breach occurred in Arizona.

**GENERAL ALLEGATIONS**

**Mr. Wilson's Employment with Taronis and Key Benefit Program Terms**

16. Taronis is an industrial gas distributor focused on distribution of an alternative metal cutting fuel and welding supplies in the United States.

17. Mr. Wilson joined Taronis in August 2019 as its Chief Financial Officer ("CFO"), Secretary and General Counsel.

18. Mr. Wilson's Employment Agreement constituted his "Participation Agreement" within the meaning of Taronis's Severance Plan and modified the Severance Plan terms with respect to Mr. Wilson in certain ways.

19. Taronis created the Severance Plan "to be an unfunded welfare plan maintained primarily for the purpose of providing severance benefits to a select group of key Taronis management employees" and provided in the Severance Plan that each participant's "rights under the Plan are limited to those of a general and unsecured creditor of [Taronis]."

20. The Severance Plan provides for certain benefits upon a participant's "Qualifying Termination," which occurs if the participant terminates for "Good Reason" or Taronis terminates for any reason other than for Cause.

21. "Good Reason" is defined in Section 4.4(b) of the Severance Agreement to include "the existence or occurrence of one or more of the following conditions or events without the Participant's prior written consent … (iii) a sustained and material reduction in the Participant's job title or responsibilities … or (iv) a material breach by the Company of

-4-

any term of the Participant's employment agreement with the Company or of the Participant's other agreements with the Company…"

22. For benefits to be payable under Section 4.4(b), a participant must give notice of Good Reason within 90 days following the first occurrence of the condition(s) claimed to constitute Good Reason, Taronis must fail to remedy the conditions in the following 30 days, and the participant must voluntarily terminate employment within the 30 days after the company's cure period expires.

23. Benefits payable to Mr. Wilson upon a Qualifying Termination under the Severance Plan, as modified by his Employment Agreement, include:

    a. His base salary for three years;

    b. A prorated bonus for the year in which the Qualifying Termination occurs at the target incentive amount or, if the event of a Change in Control, the maximum bonus under his Employment Agreement;

    c. Any unpaid cash bonus for the year prior to the year of his termination; and

    d. A lump sum equal to three years of the monthly premiums for medical and dental coverage under COBRA at the time of his Qualifying Termination, based on his medical and dental coverage in effect immediately before the termination.

24. "Change in Control" is defined in Section 2.1(e) of the Severance Plan to include: "A change in the effective control of the Company that occurs on the date that a majority of members of the Board is replaced during any twelve (12) month period by members of the Board whose appointment or election is not endorsed by a majority of the members of the Board prior to the date of the appointment or election…"

25. For benefits to be affected by a Change in Control, a Qualifying Termination must occur during a "Change-in-Control Period," meaning a period of 15 months beginning three months before the effective date of a Change in Control.

26. The Board's Compensation Committee is the Administrator of the Severance Plan.

27. Section 9 of the Severance Plan provides a "Claims and Appeals" procedure that is compliant with 29 C.F.R. § 2560.503-1.

28. Taronis and Mr. Wilson amended the Employment Agreement effective December 1, 2020 to, among other things, end his post as CFO given the hiring of Mary Pat Thompson to serve in that office.

29. The Employment Agreement was amended a second time, also effective December 1, 2020, to ensure that Mr. Wilson would "have the same benefits under the Company's Executive Severance Plan as originally agreed" notwithstanding his voluntary resignation from the CFO role.

30. Ms. Thompson's initial tenure as CFO was short-lived, as was her tenure on the Taronis Board. She and Tobias Welo, who was also appointed to the Board on or about December 1, 2020 at the suggestion of investor Thomas Wetherald, quickly went on the attack against Mr. Wilson and Taronis's Chief Executive Officer ("CEO") over disagreements about business strategy.

**A public battle for control of Taronis results in a new board hostile to Mr. Wilson**

31. The events leading to Ms. Thompson and Mr. Welo's resignations from the Board and Ms. Thompson's resignation as CFO on December 20, 2020 are well documented in the Form 8-K filed by Taronis with the SEC on December 23, 2020, a copy of which is attached as Exhibit 1.

32. An investigation into breaches of fiduciary duties by Ms. Thompson and Mr. Welo resulted in findings that they had, in fact, breached their duties to Taronis by sharing non-public information with Mr. Wetherald amidst their efforts to cause the termination of Mr. Wilson and Taronis's CEO.

33. On February 12, 2021, Mr. Wetherald and Mr. Welo filed a Schedule 14A Preliminary Consent Statement seeking shareholder consent to remove all five members of Taronis's Board and elect in their place Mr. Wetherald, Mr. Welo, Sergey Vasnetsov, Ms. Thompson, and Andrew McCormick (the "Nominees").

34. Mr. Wetherald and Mr. Welo filed additional materials with the SEC on February 16, 2021, wherein Mr. Wetherald complained that Taronis's "current financial model [ ] disproportionately accrues to Mr. Mahoney [Taronis's CEO], Mr. Wilson and incumbent Board of Directors."

35. On March 5, 2021, the other Nominees joined Mr. Wetherald and Mr. Welo in filing a Schedule 14A Definitive Consent Statement, this time calling out:

> Tyler Wilson received $275,000 in salary in 2020, plus $275,000 under the Company's executive bonus plan (half paid in shares in January 2021) and $37,019 for accrued earned paid time off. Further, Scott Mahoney and Tyler Wilson are entitled to bonuses of up to 300% of their annual base salaries. We believe that the Board must be reconstituted immediately to end this outflow of precious capital to a management team that has failed to create value for the Company's shareholders.

36. The Nominees described in their March 5, 2021 filing the benefits Mr. Wilson would be entitled to under the Severance Plan, including the application and effect of the Change in Control that would be triggered under the plan if the Nominees were successful in their proxy solicitation.

37. By March 12, 2021, the Nominees made clear their intentions to find a basis to terminate Mr. Wilson for cause to avoid his "exorbitant 'golden parachute'" should they prevail in their Board takeover attempt.

38. A similar message was included in proxy materials filed by the Nominees on March 26, 2021, characterizing Mr. Wilson's compensation as "Unjust Enrichment."

39. Although Taronis and the incumbent Board members strenuously opposed the Nominees' campaign and documented the untruth of the Nominees' attacks, on April 8, 2021, Taronis and the Nominees finalized an agreement to resolve their disputes on terms that included the resignation of all Board members apart from Peter Malloy and the appointment of the Nominees to the Board.

///

///

**Mr. Wilson's notice of Good Reason and resignation**

40. Mr. Wilson was awarded a bonus for 2020 pursuant to a Unanimous Written Consent of the Compensation Committee of the Board of Directors in Lieu of a Special Meeting, dated January 21, 2021 (the "Written Consent").

41. The Written Consent confirms that the 2020 bonus was awarded to Mr. Wilson "pursuant to the terms of [his] employment agreement," which provides for an annual cash bonus payable at the end of each calendar year or at such other time agreed to between Mr. Wilson and Taronis, sets certain minimum amounts for a "Target Cash Bonus," "Exceeds Cash Bonus," and "Stretch Cash Bonus," and in other respects incorporates the terms of Taronis's Executive Bonus Plan ("Bonus Plan").

42. Per Section 3(a) of the Bonus Plan, the Compensation Committee administers and carries out the plan's provisions and the Board retains authority to concurrently administer the plan.

43. Although the Compensation Committee has discretion in carrying out the provisions of the Bonus Plan, its authority is constrained by certain mandatory terms, including that participants "will receive a cash lump sum payment of his or her or its Bonus" and that "[i]n no event will such payment be made later than March 15" of the year after the bonus was determined for.

44. Section 2 of Mr. Wilson's Employment Agreement also confirms that his bonuses were to be in cash.

45. Nonetheless, in the Written Consent, the Compensation Committee divided Mr. Wilson's 2020 bonus between cash and shares of Taronis stock, with the $137,500 cash portion to be paid in equal weekly installments over a 52-week period.

46. Taronis made two of the weekly bonus payments, on January 29, 2021 and February 5, 2021, and then stopped making them altogether.

47. Taronis also materially reduced Mr. Wilson's responsibilities as General Counsel, circumventing him in the management and even retention of outside counsel and

excluding him entirely from negotiations to settle the proxy battle over control of the Board and related Delaware Chancery Court litigation between Taronis and the Nominees.

48. Mr. Wilson raised these and other material breaches of his Employment Agreement and material and sustained reductions of his job responsibilities in an April 5, 2021 Notice of "Good Reason" Pursuant to Section 4.4 of Taronis Fuels, Inc. Executive Severance Plan that he delivered to Robert Dingess, Board Chair.

49. On May 4, 2021, Mr. Welo, who had since become Board Chair, wrote to Mr. Wilson stating Taronis's position that Mr. Wilson did not set forth "Good Reason" pursuant to the Severance Plan.

50. Mr. Wilson submitted his resignation on May 6, 2021, noting that the conditions described in his Good Reason notice had not been remedied during the 30-day cure period and invoking his right to benefits under the Severance Plan.

51. On May 12, 2021, Taronis filed a Form 8-K reporting Mr. Wilson's termination and stating as follows:

> Mr. Wilson has asserted that he had "good reason" for terminating his employment under the Company's Executive Severance Plan (the "Plan"). The Company believes that Mr. Wilson's assertion is without merit and intends to treat Mr. Wilson's resignation as without "good reason" under the Plan.

**Mr. Wilson's benefits claim and the administrative review and appeal**

52. On May 19, 2021, counsel for Mr. Wilson initiated the claims procedure under the Severance Plan by letter addressed to Taronis's legal counsel explaining the amounts owed to Mr. Wilson following his Qualified Termination within a Change-in Control period.

53. Consistent with Taronis's public pledge to deny Mr. Wilson benefits under the Severance Plan, on May 25, 2021, counsel for Taronis responded to the Claim as follows:

> As you know, we are counsel to Taronis Fuels. We are in receipt of your letter dated May 19, 2021. Nothing therein alters the Company's position, as set forth in Mr. Welo's May 4, 2021 letter, that your client did not have Good Reason to resign from his employment. Thus, Mr. Tyler (sic) is not owed any benefits under the Executive Severance Plan.

> Also, you are incorrect that there was a Change in Control. The incumbent directors approved the new directors' appointment by written consent dated April 8, 2021. Accordingly, there was no Change in Control under the Executive Severance Plan.

54. On May 28, 2021, Mr. Wilson made a request for information relevant to the denial of his Claim pursuant to Section 9.3 of the Severance Plan and stated his intention to appeal the denial.

55. Rather than provide any documents, records, or other information as required by the Severance Plan, counsel for Taronis responded by denying that a claim had been made or that one had been denied.

56. The Severance Plan's claims process was clearly invoked in the Claim as follows: "Please ensure that the Taronis Board **and the Claim Reviewer** receive this letter. If Taronis decides to deny **Mr. Wilson's claim to Severance Benefits**, Mr. Wilson will vigorously pursue his rights." (emphasis added).

57. Counsel for Taronis acknowledged that the May 25, 2021 denial was procedurally improper under Section 9.3 of the Severance Plan, which requires a Claim Reviewer to make an initial determination on claims and decide any subsequent appeal.

58. After additional exchanges, Taronis's counsel reported that Taronis would agree to recognize the Claim as a claim under the Severance Plan and appoint a Claim Reviewer to consider the Claim.

59. Taronis's attempt to sanitize its preordained denial of Mr. Wilson's Claim by appointing a Claim Reviewer was ineffective. Nonetheless, Mr. Wilson engaged with the Claim Reviewer and followed the administrative process provided in the Severance Plan to preserve his rights.

60. On July 14, 2021, Mr. Wilson received a letter from Board member Andrew McCormick indicating that he had been appointed by Taronis as the Claim Reviewer to consider Mr. Wilson's Claim.

61. Mr. McCormick is one of the Nominees who participated in the campaign to unseat the incumbent Board members by attacking Mr. Wilson's compensation and benefits packages. He is also a former Associate at the same law firm where Taronis's lawyers who sent the May 25, 2021 denial practice.

62. Under the Severance Plan, the Claim Reviewer must either be the person or entity designated as the Claim Reviewer for the plan, or if there is none, then Taronis's General Counsel.

63. No Claim Reviewer was designated for the Severance Plan as of the date of Mr. Wilson's Claim, and Taronis was without a General Counsel.

64. No documents, records, or other information about Taronis's initial consideration and denial of the Claim or about Mr. McCormick's appointment as Claim Reviewer have been produced to Mr. Wilson despite his request and clear right to the information under the Severance Plan and ERISA.

65. Mr. Wilson submitted an appeal of the May 25, 2021 Claim denial on July 23, 2021, within the period allowed under the Severance Plan. Taronis responded that the appeal was premature until Mr. McCormick made his determination on the Claim and took no action on the appeal.

66. Mr. McCormick sent a letter on August 16, 2021 denying Mr. Wilson's claim for reasons that largely tracked the positions Mr. Welo took in his May 4, 2021 response to Mr. Wilson's Good Reason notice.

67. With respect to the sustained and material reduction in Mr. Wilson's job responsibilities asserted in the Claim, Mr. McCormick viewed each cited example in isolation and determined that none of them was sustained or material. This led to the absurd result that, according to Mr. McCormick, the near-complete sidelining of Mr. Wilson in his role as General Counsel over the previous months was neither sustained nor material.

68. With respect to failure to pay Mr. Wilson's 2020 bonus, Mr. McCormick wrote: "I understand that the Compensation Committee approved your 2020 bonus based on representations by Company management that revenue targets for 2020 were achieved or on

target to be achieved" and that "after your 2020 bonus was approved, the Company learned that it was likely going to have to restate its 2020 financials by significantly reducing revenue, gross margins and profit—all of which factored heavily into bonus calculations."

69. Mr. McCormick asserted: "Since (i) pursuant to the Bonus Plan, your Bonus is based primarily on such objective financial Performance Criteria; (ii) the Plan gives the Compensation Committee discretion to determine the applicable Performance Criteria; and (iii) the board and the Compensation Committee have discretion under the Plan to clawback or recoup any bonuses paid under the Plan, it is my determination that the Company's suspension of your 2020 cash bonus in anticipation of its restatement was consistent with the Company's obligations to you pursuant to the terms of your Employment Agreement and the Bonus Plan, and also consistent with the Company's obligation to its shareholders."

70. Of the three points Mr. McCormick raised about Mr. Wilson's bonus, only one applied to stopping payments, i.e., the Compensation Committee's discretion to clawback or recoup bonuses. The other two points related to decisions whether to award a bonus in the first instance.

71. Section 8(l) of the Bonus Plan addresses clawbacks as follows: "All Bonuses are subject to clawback or recoupment under any clawback or recoupment policy adopted by the Board or the Committee in effect from time to time, or required by Applicable Law, during the term of Participant's employment or other service with the Company that is applicable to officers, employees, directors, or other service providers of the Company."

72. Neither Taronis nor the Compensation Committee adopted any clawback or recoupment policy that was in effect during the term of Mr. Wilson's employment.

73. Taronis was not required by Applicable Law to have a clawback or recoupment policy during the term of Mr. Wilson's employment that allowed for a bonus to be withdrawn, voided, suspended, or otherwise changed because of the possibility of future financial restatements.

74. On October 13, 2021, Mr. Wilson submitted a supplement to his July 21, 2021 appeal, this time directed to Mr. McCormick, reserving his right to dispute the propriety of

1  Mr. McCormick's appointment as Claim Reviewer and his position that the May 25, 2021
2  Claim denial was not properly retracted.

3    75. On the bonus issue, Mr. Wilson raised the inapplicability of Section 8(l) of the Bonus Plan, his lack of agreement to split his cash bonus between stock and cash, his lack of agreement to defer payment of his bonus, and the Compensation Committee's failure to condition payment of the awarded bonus on information that might be learned in its ongoing financial audit.

   76. On December 12, 2021, Mr. McCormick sent Mr. Wilson a letter denying his appeal.

   77. With respect to bonus payments, Mr. McCormick determined that Mr. Wilson agreed to the splitting of his bonus between cash and stock because, when Taronis's CEO wrote to inform him what the CEO and Compensation Committee decided for his bonus and how it should be documented, Mr. Wilson did not object.

   78. Mr. McCormick cited a lack of evidence of objection to mean that Mr. Wilson acquiesced to the structure and timing of his bonus award. However, neither the Bonus Plan nor Mr. Wilson's Employment Agreement permit the Compensation Committee to vary terms based on Mr. Wilson's failure to object, as opposed to his agreement with the variance.

   79. Even if the structure of the bonus were proper, Mr. McCormick failed to offer a valid justification for Taronis's failure to pay the cash portion as set forth in the Written Consent.

   80. Mr. McCormick emphasized: "I've seen no evidence that, when your bonus was approved, the Company knew that the revenue projections on which your bonus was based were actually inaccurate, let alone the extent to which they were inaccurate. Nor have I seen any evidence that the Company knew at the time it approved your 2020 bonus that the very revenue on which your bonus and others' were based would need to be restated."

   81. Mr. McCormick's observation implies that Taronis knew the revenue projections on which Mr. Wilson's bonus was awarded were inaccurate, knew the extent to which they were inaccurate, and knew the revenue would have to be restated when it stopped

paying Mr. Wilson's bonus. His denial letter, however, shows that Taronis did not know any of that when it defaulted on the bonus payments.

82. Mr. McCormick demonstrated as much by asserting that Taronis's auditor, Marcum LLP, "did not think all relevant information was available" at the end of March or early April 2021 and would not have told Taronis's CEO that a restatement was unlikely "prior to having had more information."

83. At no time did Taronis or Mr. McCormick offer any information showing that revenue projections as of January 21, 2021 were inaccurate or that Performance Goals for Mr. Wilson's bonus were not met based on revised 2020 financial data.

84. Neither Taronis nor Mr. McCormick explained how Taronis's mere intention to restate its financials in the future could justify voiding Mr. Wilson's bonus under the terms of the Bonus Plan or otherwise.

85. Mr. McCormick also discounted Mr. Wilson's argument that any decision by Taronis to stop paying his bonus was procedurally deficient because "you have not identified anything in the Plan, the Bonus Plan or the Employment Agreement concerning the requisite procedure for suspending a bonus award based on misstated financial performance criteria."

86. Mr. McCormick's finding of no procedure to unwind bonuses works against Taronis, not against Mr. Wilson. The fact there was no procedure by which Taronis could renege on paying an awarded bonus means that doing so was a breach of its obligations to Mr. Wilson.

87. Mr. McCormick also ignored Mr. Wilson's position that while the Written Consent was executed consistent with the Taronis Bylaws, neither the Compensation Committee nor the Board took any action consistent with the Bylaws to void Mr. Wilson's bonus. In other words, if either the Board or the committee had the power to void Mr. Wilson's bonus under the circumstances, they failed to validly exercise it.

88. Mr. McCormick did not respond to Mr. Wilson's appeal regarding the lack of any clawback or recoupment policies.

89. Seemingly because Section 8(l) of the Bonus Plan did not support his clawback position, Mr. McCormick changed directions and claimed that Mr. Wilson agreed to defer his bonus in the event of a "cash crunch" and that Taronis's CEO, CFO, and the Board recognized the company was in need of liquidity on February 11, 2021.

90. Mr. McCormick's only basis for claiming Mr. Wilson agreed to deferrals was the CEO's email reporting on the *CEO's* agreement with the Compensation Committee. Mr. Wilson was never asked to agree and never gave his agreement to those terms that were reported to him. Mr. McCormick offered no evidence to the contrary.

91. Mr. McCormick ignored the fact that no Board member claimed Mr. Wilson's bonus payments were being deferred during a "cash crunch." All Board members who explained the stoppage claimed that the bonus was "voided" and that what had been paid and delivered in stock should have been returned.

**Mr. Wilson's requests for relevant information pursuant to the Severance Plan**

92. Mr. Wilson submitted to Mr. McCormick a written request for information relevant to the denial of his Claim on August 31, 2021, pursuant to Section 9.3(c) of the Severance Plan and Mr. McCormick electronically delivered documents on September 21, 2021.

93. After reviewing the materials produced by Mr. McCormick, Mr. Wilson sought confirmation through his counsel on October 7, 2021 that all relevant materials were provided. Mr. McCormick responded in the affirmative on October 11, 2021.

94. On October 12, 2021, Mr. Wilson asked Mr. McCormick again whether there were additional relevant materials and noted categories of relevant information under the Severance Plan for which no documents appeared to have been provided. The lack of any produced emails between Mr. McCormick and Taronis's legal counsel was noted, given they were copied on Mr. McCormick's communications with Mr. Wilson.

95. On November 8, 2021, Mr. McCormick produced 82 documents that he had not previously produced in response to Mr. Wilson's information requests.

96. Mr. McCormick's November 8, 2021 production contained many exchanges between him and Taronis's legal counsel dating back to July 6, 2021.

97. These documents revealed that the administrative process was biased against Mr. Wilson and the appointment of a Claim Reviewer was a mere cover for Taronis to re-issue it's heavily conflicted denial of Mr. Wilson's claim. Among other examples:

    a. Taronis's legal counsel wrote the Claim denial letter Mr. McCormick sent on August 16, 2021 and explained in an August 12, 2021 email: "Attached for your review is a draft letter denying Tyler's claim. We should schedule a time to talk once you've had a chance to read through."

    b. Mr. McCormick replied on August 12, 2021 pointing out "a handful of areas where I need additional background information / need to understand the investigation that has taken place to get comfortable signing."

    c. On August 13, 2021, Taronis's counsel sent Mr. McCormick "a document showing the source for each assertion in the claim denial" "[a] zip file with the source docs we have" "[a] Q&A doc for your call with the former directors" and "[a] revised letter, clean and redline to the last draft we sent you."

    d. On August 31, 2021, Mr. McCormick wrote to Taronis Board Chair Tobias Welo and Taronis CEO Kevin Foti: "I do think we are reaching the point fairly soon where both sides must be tired of paying for lawyers, and it may be in our best interest to ask HL to reach out to DLA and see whether we can bring this to resolution without further investment of time and dollars. Curious of your thoughts."

98. Mr. McCormick produced additional documents December 12, 2021, revealing that Taronis's legal counsel also prepared the appeal denial letter and provided it to Mr. McCormick to sign.

**Amounts owed to Mr. Wilson**

99. Pursuant to the Severance Agreement and his Employment Agreement, as amended, Mr. Wilson became entitled to the following benefits:

    a. Base salary of $275,000 per year for three years, or $825,000;

    b. Unpaid bonus compensation for 2020 in the amount of $132,211.54;

    c. Bonus compensation for 2021 in the amount of $825,000; and

    d. A lump sum payment for COBRA benefits in the amount of $91,002.24.

100. The amount of Mr. Wilson's 2021 bonus compensation is set by Section 4.1(a)(2) of the Severance Plan, which provides that "in the event of a Change in Control, the Participants shall receive their maximum bonus award under their employment agreements…"

101. The maximum amount of Mr. Wilson's bonus, pursuant to his Employment Agreement, is three times his annual base salary.

102. On April 5, 2021, the Nominees delivered to Taronis sufficient shareholder consents in favor of their Schedule 14A Consent Solicitation Statement to cause the removal of the incumbent Board members and elect the Nominees to the Board.

103. The election of new members to fill 80% of the Board's seats was opposed by the former Board members and therefore resulted in a Change in Control under the Section 2.1(e) of the Severance Plan.

104. Alternatively, a Change in Control occurred when the former Board members and new Board members signed their April 8, 2021 Cooperation and Settlement Agreement because the Board transition confirmed in that agreement involved no "endorsement" of the new Board members pursuant to Section 2.1(e) of the Severance Plan.

## CLAIMS FOR RELIEF

## COUNT ONE

**Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B))**

105. Mr. Wilson incorporates the foregoing allegations by reference as if expressly alleged herein.

106. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the

plan, to enforce his rights under the terms of the plan, and to clarify his rights to benefits under the terms of the plan.

107. The Severance Plan is an unfunded plan of deferred compensation covered by ERISA, and Mr. Wilson was a participant in the Severance Plan.

108. Mr. Wilson's resignation from Taronis was a Qualifying Termination under the terms of the Severance Plan, entitling him to the severance benefits provided in the Severance Plan as amended by his Employment Agreement.

109. Mr. Wilson's Qualifying Termination occurred during a Change-in-Control period, entitling him to certain enhanced benefits as provided in the Severance Agreement and his Employment Agreement.

110. All amounts payable pursuant to Mr. Wilson's Employment Agreement are recoverable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because they are part of an integrated employee benefit plan covered by ERISA.

111. Mr. Wilson has exhausted the administrative claim and appeal process set forth in the Severance Plan.

112. As a direct and proximate result of Taronis's and Mr. McCormick's wrongful denial of benefits, Mr. Wilson has been deprived of the severance benefits to which he is entitled under the Severance Plan and Employment Agreement in an amount to be proven at trial.

113. Additionally, Plaintiff seeks an award of reasonable attorneys' fees and costs of suit under 29 U.S.C. § 1132(g)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Actual damages in an amount to be proven at trial;

B. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

C. An award of Plaintiff's attorneys' fees and costs incurred herein pursuant to 29 U.S.C. § 1132(g)(1) and any other applicable law; and

D. For any other relief as the Court deems appropriate.

Dated: February 11, 2022.

DLA PIPER LLP (US)

By: *s/ Craig M. Waugh*
    Craig M. Waugh
    craig.waugh@dlapiper.com
    Kyle T. Orne
    kyle.orne@dlapiper.com
    Madeline A. Cordray
    madeline.cordray@dlapiper.com
    2525 East Camelback Road, Suite 1000
    Phoenix, Arizona 85016-4232
    Telephone:    480.606.5100
    Facsimile:    480.606.5101

*Attorneys for Plaintiff Tyler B. Wilson*