**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler B. Wilson,  Plaintiff, vs. Taronis Fuels Incorporated,  Defendant. | No. CV-22-00229-PHX-SPL  **ORDER** |

Before the Court are three pending motions filed by Defendant Taronis Fuels Incorporated ("Defendant" or "Taronis"). The first motion is Defendant's Partial Objection to the Administrative Record (Doc. 26). Defendant's Partial Objection is fully briefed and ready for review. (Docs. 26, 27, & 31). The second motion is Defendant's Motion for Leave to Supplement Response Brief (Doc. 38). Defendant's Motion to Supplement is fully briefed and ready for review. (Docs. 38, 39, & 40). The third motion is Defendant's Motion to Stay Proceedings (Doc. 44). Defendant's Motion to Stay is fully briefed and ready for review. (Docs. 44, 47, & 48). The Court has fully reviewed the parties' briefing and will address each of the three pending motions in turn.[1]

**I.   Defendant's Partial Objection to the Administrative Record (Doc. 26)**

Defendant objects to the inclusion in the administrative record of a November 19,

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

2021 letter (AR001278–79)[2] and a chain of emails from December 2021–January 2022 (AR001378–98).[3] The letter and emails reference a presentation "slide deck" (the "Slide Deck") that was prepared for Defendant's use by a third-party law firm at some point prior to Plaintiff's resignation. (Doc. 26 at 3). Defendant contends that the Slide Deck was "inadvertently disclosed" to the Claim Reviewer, Andrew McCormick, during his review of Plaintiff's claim for benefits. (*Id.* at 1). Following Plaintiff's appeal of Mr. McCormick's initial denial of his claim, Plaintiff requested Mr. McCormick's file pursuant to Section 9.3(c) of the Severance Plan. Section 9.3(c) provides as follows:

> In connection with any appeal, the claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to his . . . claim for benefits. A document, record, or other information will be considered relevant to a claim for benefits if such document, record, or other information:
>
> (1) Was relied upon in making the benefit determination;
>
> (2) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or
>
> (3) Demonstrates compliance with processes and safeguards designed to ensure and to verify that the benefit determination was made in accordance with the terms of the Plan and that such terms of the Plan have been applied consistently with respect to similarly situated claimants.

(*Id.* at 2). Given that the Slide Deck was provided to Mr. McCormick, Plaintiff requested that it be produced along with the other Section 9.3(c) materials. Defendant declined to produce the Slide Deck, explaining to Plaintiff that the Slide Deck was "(1) not relevant; (2) privileged; and (3) inadvertently disclosed to [Mr. McCormick]." (Doc. 26 at 3). Defendant further explained that there was no evidence suggesting that Mr. McCormick even considered or relied upon the Slide Deck when making his determination. (*Id.*).

Turning to the documents at issue, the November 19, 2021 letter (AR001278–79)

---

[2] *See* Doc. 25-6 at 138–39.
[3] *See* Doc. 25-7 at 94–114.

2

was sent from Plaintiff's counsel to Mr. McCormick. (*See* Doc. 25-6 at 138–39). The letter set forth Plaintiff's position that the Slide Deck should have been produced pursuant to Section 9.3(c) and requested that Defendant advise Plaintiff of its position on the matter and provide a copy of the Slide Deck. (*Id.*). The December 2021 and January 2022 emails (AR001378–98) were exchanged between Plaintiff's counsel and Mr. McCormick. (*See* Doc. 25-7 at 94–114). Like the November letter, the emails concerned the parties' dispute over production of the Slide Deck. (*Id.*).

Defendant now requests that this Court strike from consideration "any exhibit in the administrative record that references the inadvertently disclosed information [*i.e.*, the Slide Deck]"—namely, the November 19, 2021 letter and the December 2021 and January 2022 emails. (Doc. 26 at 1). Defendant objects to "any reference to the Slide Deck beyond [Plaintiff]'s original request for the Claim Reviewer's entire file and the assertion that the Slide Deck was inadvertently disclosed." (*Id.* at 6). Defendant further takes the position that Plaintiff should not be permitted to "(1) challenge the fact that the Slide Deck was inadvertently disclosed to the Claim Reviewer; (2) speculate as to the contents of the Slide Deck; or (3) speculate as to why the Slide Deck was not produced." (*Id.*).

The Court denies Defendant's request. Defendant fails to meaningfully explain why *the letter and emails* should be stricken from the administrative record. Instead, Defendant's Motion (and Reply brief) focuses almost exclusively on explaining why *the Slide Deck* was irrelevant and how it was inadvertently disclosed. For example, Defendant cites to Ninth Circuit caselaw providing that "[i]n the ERISA context, the administrative record consists of the papers the [plan administrator] had when it denied the claim." (Doc. 26 at 4 (quoting *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 n.4 (9th Cir. 2009)). One might expect Defendant to rely on this caselaw to argue that Mr. McCormick did not have the letter and emails in his possession when he denied Plaintiff's claim and that therefore such documents should not be part of the administrative record. Defendant makes no such argument. Instead, Defendant launches into a discussion of how the Slide Deck was inadvertently disclosed and why the Slide Deck was irrelevant because it did not

3

fall under any of the three categories of relevant documents that must be produced pursuant to Section 9.3(c). (*See* Docs. 26 at 5–6 & 31 at 2–3). Such a discussion is beside the point. The issue on Defendant's Motion is *not* whether the Slide Deck should be included in the administrative record; indeed, the Slide Deck was not so included. Rather, the issue is whether a specific letter and certain email communications—which *relate* to the Slide Deck but do not disclose its allegedly privileged contents—were correctly included in the administrative record. To that end, Defendant does not offer any meaningful argument.

The fact that the documents at issue (the letter and emails) refer to the allegedly privileged and inadvertently disclosed Slide Deck does not necessarily mean that the documents at issue are *themselves* privileged or inadvertently disclosed. Defendant does not offer—and this Court is itself unaware of—any legal authority providing that documents must be stricken from the administrative record merely because they refer to or concern a separate document that is privileged, inadvertently disclosed, or otherwise protected from production. Moreover, Plaintiff offers credible reasons why the letter and emails may be relevant, *even if* the Slide Deck remains outside the record. The Court is persuaded that the letter and emails are relevant because they were "submitted, considered, or generated in the course of making the benefit determination" and/or concern Defendant's "compliance with the administrative process and safeguards required pursuant to paragraph (b)(5) of [29 C.F.R. § 2650.503-1] in making the benefit determination." (*See* Doc. 27 at 3 (citing 29 C.F.R. § 2650.503-1(m)(8)(ii)–(iii))). Plaintiff also cites to caselaw providing that "[m]aterials . . . fall[ing] into one of the foregoing categories [provided in § 2650.503-1(m)(8)] should be considered 'part of the administrative record.'" *See Metaxas v. Gateway Bank F.S.B.*, No. 20-cv-01184-EMC (DMR), 2022 WL 972039, at *2 (N.D. Cal. Mar. 31, 2022) (cited by Plaintiff at Doc. 27 at 2–3) (quoting *Nguyen v. Sun Life Assurance Co. of Canada*, No. 3:14-cv-05295 JST (LB), 2015 WL 6459689, at *3-4 (N.D. Cal. Oct. 27, 2015)). Thus, Plaintiff offers legitimate reasons for the letter and the emails to remain in the administrative record.

As a final matter, the Court outright rejects Defendant's request that Plaintiff be

prohibited from taking certain positions or making certain arguments as it relates to the Slide Deck. To the extent that Plaintiff may—in his briefing—"challenge the fact that the Slide Deck was inadvertently disclosed to the Claim Reviewer, [] speculate as to the contents of the Slide Deck, or [] speculate as to why the Slide Deck was not produced," Defendant had the opportunity to respond in its own briefing. This Court is fully capable of reviewing the parties' briefing and fairly considering their respective positions on the issues. All told, the Court finds no reason to excise the letter and emails from the administrative record. The Court denies Defendant's Partial Objection and will not strike AR001278–79 and AR001378–98 from the administrative record.

## II. Defendant's Motion for Leave to Supplement Response Brief (Doc. 38)

As an initial matter, the parties dispute the standard of review to which this Court must adhere in reviewing Defendant's denial of severance benefits to Plaintiff. Plaintiff argues that the Court should conduct a *de novo* review. (Doc. 29 at 14–17). Defendant argues that the Court should review its denial according to an abuse of discretion standard. (Doc. 37 at 8–11). Although the Court does not resolve the parties' dispute at this time, the Court notes the dispute's existence because Defendant's Motion to Supplement only seeks relief in the event that the Court finds *de novo* review to be appropriate. (*See* Doc. 38 at 2 (noting that Defendant moves to supplement only "in the event the Court decides to apply a *de novo* review standard")). The Motion seeks leave to supplement the record and Defendant's Response brief. (*Id.*). Specifically, Defendant seeks to supplement the record "with reference to, and a copy of" a complaint filed on August 25, 2022 by the Securities and Exchange Commission ("SEC") in the Middle District of Florida against both Plaintiff Wilson and Defendant Taronis. (*Id.*); *see also SEC v. Taronis Techs., Inc., et al.* (the "SEC Lawsuit"), No. 8:22-cv-01939-TPB-AAS (M.D. Fla. Aug. 24, 2022).[4] Defendant seeks to

---

[4] In the SEC Lawsuit, the SEC filed numerous claims against Plaintiff Wilson, Defendant Taronis Fuels, Inc., and former Taronis CEO Scott Mahoney, including violations of the Securities Act, 15 U.S.C. § 77q(a) and the Exchange Act, 15 U.S.C. § 78j(b). *See* SEC Lawsuit, No. 8:22-cv-01939-TPB-AAS, ECF No. 1 at 54–75.

supplement its Response brief "to include additional facts and argument as set forth" in an exhibit attached to the Motion. (Doc. 38 at 2; Doc. 38-1 at 1–3).

Generally, a district court reviewing a benefits decision under ERISA "should only look at the evidence that was before the plan administrator . . . at the time of the determination." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)). In other words, courts are typically limited to reviewing the evidence found in the administrative record. *See Montour*, 588 F.3d at 632 n.4 ("In the ERISA context, the administrative record consists of the papers the [plan administrator] had when it denied the claim."). That said, the Ninth Circuit has recognized that district courts have discretion to consider evidence outside the administrative record when circumstances *clearly establish* that the additional "evidence 'is necessary to conduct an adequate *de novo* review of the benefit decision.'" *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 978 (9th Cir. 1999) (quoting *Mongeluzo*, 46 F.3d at 944).

Here, Defendant argues that certain assertions put forth by Plaintiff in the Opening Brief make it necessary for the Court to consider the allegations made in the SEC Lawsuit. First, Defendant points to five instances in Plaintiff's Opening Brief where the interested shareholders and new Board members are referred to as "activists." (Doc. 38 at 4). Defendant considers this as a "hyperbolic description of the shareholders and new Board members" aimed at "disparag[ing] and discredit[ing] the shareholders and new Board members to bolster Plaintiff's claim that he was being treated unfairly." (*Id.*). Defendant contends that the investigation into Plaintiff's employment activities—which led to the SEC Lawsuit—was not intended to attack Plaintiff, but rather "to address the Board's concerns regarding Plaintiff's conduct." (*Id.*). Second, Defendant points to the Opening Brief's assertions that "Taronis never did issue a restatement of its 2020 financials" and that this "speaks volumes." (*Id.*). Defendant contends that these assertions infer that "Taronis has somehow breached its agreement with Plaintiff or has some other agenda for not restating its financials." (*Id.*).

6

In light of these Opening Brief assertions by Plaintiff, Defendant requests that the record be supplemented with the complaint from the SEC Lawsuit so that the Court may consider the allegations made against Plaintiff therein. With respect to Plaintiff's references to the shareholders and new Board members as "activists," Defendant asserts that this Court's consideration of the SEC Lawsuit allegations will allow Defendant the opportunity to respond to these perceived "unfair attacks on [the] character and credibility" of the interested shareholders and new Board members. (*Id.* at 5). With respect to Plaintiff's assertion that Defendant's failure to issue a restatement of its 2020 financials "speaks volumes," Defendant contends that a "not-so-quick read of the 235 paragraph SEC Complaint reveals the extent of the conduct the SEC attributes to Plaintiff (and [former Taronis Fuels CEO Scott] Mahoney) and that conduct's alleged impact on Taronis' financial statements." (*Id.*). Defendant explains that the SEC Lawsuit shows that Plaintiff "is a purported cause of the issues with the financial statements," which undermines Plaintiff's "attack[s]" on Defendant for not restating its financials. (*Id.*). Defendant's proposed addition to its Response brief is short and almost identical to the discussion and arguments in Defendant's Motion to Supplement. (*See* Doc. 38-1 at 2–3). The proposed addition argues that there were no "activist groups" as alleged by Plaintiff and that Plaintiff "mischaracterizes the 2020 restated financials." (*Id.*).

The Court finds that Defendant has failed to "clearly establish" that consideration of the SEC Lawsuit "is necessary to conduct an adequate *de novo* review of the benefit decision." *See Mongeluzo*, 46 F.3d at 944. As an initial matter, Defendant's Motion to Supplement does not specifically identify the SEC allegations that Defendant seeks to have this Court consider. Given that Defendant's proposed addition to its Response brief is almost identical to its discussion of the issue in the Motion to Supplement, the proposed addition *also* fails to identify any specific allegations from the complaint. Instead, it appears that Defendant merely seeks to include the entirety of the 79-page, 24-count SEC complaint in the record of this case, with the hope that this Court will find the relevant allegations on its own. However, it is not this Court's job to conduct a "not-so-quick read

7

of the 235-paragraph" complaint in search of allegations that counter Plaintiff's characterization of the shareholders and new Board members as "activists." Nor is it this Court's job to scour the complaint in search of allegations showing that Plaintiff is the "purported cause of the issues with the financial statements." It was Defendant's burden to clearly establish that consideration of the SEC Lawsuit was "necessary to conduct an adequate *de novo* review of the benefit decision." *See Mongeluzo*, 46 F.3d at 944. Defendant's Motion to Supplement does not meet that burden.

Defendant's Motion to Stay—discussed below—*does* identify specific allegations from the SEC complaint that, according to Defendant, "directly pertain to Plaintiff's claims in the instant matter." (Doc. 44 at 2). Even if the Court were to incorporate this list of allegations into Defendant's Motion to Supplement, Defendant still fails to clearly establish that such allegations are "necessary" to conduct an adequate review of the benefit decision. To be sure, the fact that Plaintiff may have engaged in certain misconduct may be relevant to why he was shut out of certain decisions that would typically fall within his job duties, such as Defendant's hiring of Coppersmith Brockelman, PLC, to investigate Plaintiff's conduct. However, the Court will be able to consider this evidence because the Claim Reviewer included it in his benefits determination and the evidence is therefore already included in the administrative record. (*See* Doc. 25-7 at 10 (Claim Reviewer noting that Coppersmith Brockelman was brought in to provide advice regarding Plaintiff's employment and to investigate evidence of bad behavior)). It is not necessary for this Court to additionally consider the details of Plaintiff's misconduct as provided in the SEC complaint.

Moreover, the fact that Plaintiff may have engaged in certain misconduct (as evidenced by the SEC Lawsuit) is less relevant to Plaintiff's *second* Good Reason for his resignation—that Defendant materially breached the parties' agreements by paying Plaintiff's 2020 bonus in weekly installments and defaulting on the bonus payments. (*See* Doc. 29 at 19–20). Whether Defendant's conduct as it relates to Plaintiff's bonus payment provided grounds for Plaintiff to resign with Good Reason is purely a contract question,

and Defendant does not meaningfully explain why it would be necessary for this Court to consider the SEC Lawsuit's allegations in answering this question.

As to Defendant's contention that it should be permitted an opportunity to respond to Plaintiff's characterization of the shareholders and new Board members as "activists" who were attacking Plaintiff and treating him unfairly, Defendant had every opportunity to do so in its Response brief.[5] Plaintiff's characterization of the shareholders and new Board members is just that—a characterization. In other words, Plaintiff is simply offering his own framing of the facts. In drafting the Response brief, Defendant had ample opportunity to offer its *own* characterization of the shareholders and new Board members—and of the investigation into Plaintiff's employment activities—using evidence *from the administrative record*. To the extent that Defendant offered such a response concerning the credibility of those involved in the investigation of Plaintiff's employment activities, the Court will consider it when ruling on the parties' briefing. In the absence of any showing that consideration of the SEC Lawsuit is absolutely necessary, however, the Court cannot grant Defendant's request to supplement the record with a complaint from an entirely independent lawsuit that was filed long after the denial of Plaintiff's benefits. The Court is well-equipped to make a full and fair ruling on Plaintiff's ERISA claim based solely on the evidence contained in the administrative record and on the parties' briefing. The Court declines to exercise its discretion to consider evidence outside the administrative record and denies Defendant's Motion for Leave to Supplement.

///

---

[5] The Court recognizes that courts have found circumstances supporting consideration of extrinsic evidence where "the credibility of the sources from which [the administrative record] was created are at issue." *Rorabaugh v. Cont'l Cas. Co.*, No. CV 05-03612 SBCRCX, 2006 WL 4384712, at *7 (C.D. Cal. Dec. 8, 2006) (citing to *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090–91 (9th Cir. 1999)). Even assuming that the Opening Brief assertions pointed out by Defendant put the credibility of the shareholders, the new Board members, and others involved in the investigation of Plaintiff's employment activities at issue, Defendant still has failed to explain, with any meaningful detail, how consideration of the SEC complaint specifically counters Plaintiff's credibility "attacks."

### III. Defendant's Motion to Stay Proceedings (Doc. 44)

Defendant requests a stay of this action pending the resolution of the SEC Lawsuit[6] filed in the Middle District of Florida. (Doc. 44 at 1). "A district court has discretionary power to stay proceedings in its own court under *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). This includes stays pending the outcome of independent proceedings. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."). The Ninth Circuit has set forth the following framework for determining whether such a stay is appropriate, based on *Landis*:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are
>
> [1] the possible damage which may result from the granting of a stay[;]
>
> [2] the hardship or inequity which a party may suffer in being required to go forward[;] and
>
> [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). With these considerations in mind, and applying the *Landis* factors, the Court finds that a stay is not warranted in this case.

With respect to the first factor, the only harm facing Plaintiff—if a stay is issued—

---

[6] *See SEC v. Taronis Techs., Inc., et al.*, No. 8:22-cv-01939-TPB-AAS (M.D. Fla. Aug. 24, 2022).

is a delay in Plaintiff receiving the funds he seeks under the Severance Plan, assuming he succeeds in this action. As Plaintiff recognizes, a delay in the receipt of money damages does not typically amount to significant harm to a plaintiff. (Doc. 47 at 4). The Court also recognizes Defendant's contention that any delay caused to Plaintiff's receipt of funds is mitigated, to an extent, by the fact that Plaintiff seeks pre-judgment interest. (Doc. 48 at 2). Although the harm facing Plaintiff is merely financial, it is largely unspeculative. The only uncertainty is whether Plaintiff is indeed entitled to severance benefits. If so, a stay would *undoubtedly* delay Plaintiff's receipt of such benefits. Moreover, the length of such delay is entirely uncertain, as there is no way of knowing how long the SEC Lawsuit will take to resolve. Given that the SEC Lawsuit was filed less than one year ago, however, it is more likely to be a lengthy delay than not. Likewise, Defendant offers no argument that the delay would be anything other than indefinite. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). In sum, although the harm facing Plaintiff if a stay is issued is merely a delay in Plaintiff's receipt of funds, the Court finds the first factor to weigh against a stay because of the uncertainty surrounding how long that delay will be. *See Leyva*, 593 F.2d at 864 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time.").

Turning to the second factor, the Court finds that any harm to Defendant absent a stay is far too speculative to support staying this action. Defendant argues that, if a stay is not issued, it will be harmed if Plaintiff is awarded severance benefits and then subsequently required to disgorge those funds to Defendant as a result of the SEC Lawsuit. Defendant explains that if this Court "were to rule in Plaintiff's favor . . . and the SEC Lawsuit later resulted in a disgorgement order, [Defendant] would be at great risk that any funds paid to Plaintiff would be depleted and not available to repay [Defendant] pursuant to any orders issued in the SEC Lawsuit." (Doc. 48 at 2–3). Defendant's theory is speculative because it depends on anticipating the outcome of two independent actions. If the present action resolves in favor of Defendant, Defendant's alleged harm would not

come to pass, regardless of the outcome of the SEC Lawsuit. Likewise, if the SEC Lawsuit is resolved in Plaintiff's favor, Plaintiff would of course not be required to disgorge any funds he obtains in this lawsuit. The Court sees no reason why the SEC Lawsuit should take precedence over the present action, which was filed first and is based on the narrow question of whether Plaintiff was correctly or incorrectly denied severance benefits. Additionally, the Court notes that Plaintiff seeks nearly $2 million in severance benefits in this case. As Plaintiff points out, Defendant stands to obtain only some small portion of that amount if it is successful in the SEC Lawsuit. Plaintiff asserts that, if the SEC Lawsuit is resolved against him, he would only be required to repay Defendant—at most—approximately $5,000. (Doc. 47 at 4–5). Defendant appears to contest this but fails to offer any reason to believe that the amount Plaintiff could be ordered to repay in the SEC Lawsuit would be anywhere close to two million dollars. (*See* Doc. 48 at 3). Defendant also fails to offer any reason to believe that Plaintiff will somehow use or otherwise "deplete" nearly $2 million dollars in funds before a resolution is reached in the SEC Lawsuit. Thus, even assuming this action and the SEC Lawsuit resolve in the manner Defendant's theory of harm supposes, the Court finds it unlikely that Plaintiff would be unable to repay Defendant a few thousand dollars. The Court finds that the second factor weighs against a stay.

Finally, the third factor asks the Court to consider "the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (citation omitted). Defendant argues that "the significance of the issues in the SEC Lawsuit and their potential impact on the instant litigation" weighs in favor of a stay allowing the SEC Lawsuit to resolve prior to a final ruling in the present action. (Doc. 48 at 4–5). Defendant argues that "Plaintiff injected a number of issues into this litigation that were not part of the Administrative Record" and that "[i]f the SEC's allegations are proven accurate in the SEC Lawsuit, such findings would directly pertain to Plaintiff's claims in the instant matter." (*Id.*). As discussed above in relation to Defendant's Motion to Supplement, the Court recognizes that Plaintiff's alleged misconduct—as laid out in the SEC complaint—is at least somewhat relevant to certain

questions before the Court in the present case. Namely, Plaintiff's allegation that he was shut out of Defendant's hiring of and engagement with Coppersmith Brockelman is partially explained by the fact that Coppersmith Brockelman was brought in to investigate Plaintiff's own conduct. However, and again as discussed above, this evidence is already in the record—and therefore may be considered by this Court—given the Claim Reviewer's reference to it in his decision. (*See* Doc. 25-7 at 10). The SEC's allegations are less relevant to other important issues before this Court, such as whether Defendant breached certain agreements in defaulting on Plaintiff's bonus payments. The Court need not wait for a resolution of the SEC Lawsuit to decide such issues.

In sum, a stay poses minimal harm to Plaintiff, as Plaintiff would only suffer a delay in receiving funds, assuming he prevails in this suit. The harm posed to Defendant *absent* a stay is highly speculative. Finally, although the SEC's allegations have some relation to factual and legal issues before this Court, the Court finds that it is fully capable of rendering a fair decision on Plaintiff's ERISA claim without waiting to see if such allegations are ultimately proven true. The Court denies Defendant's request for a stay.

Accordingly,

**IT IS ORDERED** that Defendant's Partial Objection to the Administrative Record (Doc. 26) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to Supplement Response Brief (Doc. 38) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Proceedings (Doc. 44) is **denied**.

Dated this 5th day of July, 2023.

Honorable Steven P. Logan
United States District Judge