**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler B. Wilson,<br><br>              Plaintiff,<br><br>vs.<br><br>Taronis Fuels Incorporated,<br><br>              Defendant. | No. CV-22-00229-PHX-SPL<br><br>**ORDER** |

      Before the Court is Plaintiff Tyler B. Wilson's ("Plaintiff") Motion for Sanctions (the "Motion") (Doc. 42) in which Plaintiff moves for sanctions against Defendant Taronis Fuels, Inc. ("Defendant" or "Taronis") for failing to mediate in good faith. Plaintiff's Motion is fully briefed and ready for review. (Docs. 42, 43, & 46). Having fully reviewed the parties' briefing, the Court grants the Motion for the following reasons.[1]

      On September 20, 2022, the parties held a private mediation. The mediation was held via Zoom and was scheduled for eight hours beginning at 8:00 a.m. MST. Defendant was represented at the mediation by Taronis CEO Jered Ruyle and defense counsel. Mr. Ruyle apparently met with Taronis' Board of Directors (the "Board") in advance of the mediation "to discuss mediation and potential terms of settlement/resolution of Plaintiff's claims." (Doc. 43 at 2). According to Defendant, the Board "gave Mr. Ruyle the parameters

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending Motion suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

of the settlement terms it would approve," but reserved the ultimate authority to hold a formal vote to approve any settlement that was reached. (*Id.*).

Plaintiff argues that sanctions are appropriate because Defendant failed to appear at the mediation in good faith. (Doc. 42 at 1–2). Plaintiff reasons that Defendant's representatives lacked actual settlement authority given that Defendant "could not agree to anything at mediation without the caveat, condition, and contingency of absent Board members' approval." (*Id.* at 3). Plaintiff adds that Defendant's "settlement position was based upon the beliefs and concerns of those absent Board members, who were not present for any discussions with the mediator." (*Id.*). Defendant argues that Mr. Ruyle *did* appear with settlement authority due to the fact that the Board provided him with the parameters of the settlement terms it would approve. (Doc. 43 at 2). Defendant additionally points out that the Board was kept updated on the progress of the mediation and that its members were available to meet to hold a formal vote to approve a settlement if reached. (*Id.*). Defendant notes that it made at least three "significant monetary settlement offers" during the mediation, further evidencing that it participated in good faith. (*Id.* at 3).

This Court's April 26, 2022 Case Management Order directed the parties and their counsel to "meet in person and engage in *good faith* settlement talks." (Doc. 20 at 2 (emphasis added)). Courts recognize that appearing in "good faith" means, in part, appearing with representatives who possess "full and complete settlement authority." *Pitman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 486 (D. Ariz. 2003); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993) (upholding district court's sanctions where party appeared at conference represented only by single attorney lacking settlement authority and no one was available by telephone with settlement authority). Federal Rule of Civil Procedure 16(f)(1) provides the Court with authority to issue sanctions "if a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in the [settlement] conference." Fed. R. Civ. P. 16(f)(1)(B).

This Court has previously issued sanctions under circumstances similar to those presented here. In *Pitman*—a case relied upon by Plaintiff—the defendant appeared at a

settlement conference represented only by "a biased corporate employee with extremely limited authority to settle the case." *Pitman*, 216 F.R.D. at 485. The court found that the defendant failed to appear in good faith because it did not bring a representative to the conference who possessed "full and complete settlement authority." *Id.* at 486. The court noted that "[f]or settlement conferences to be productive and worthwhile, . . . settlement negotiations must take place in the physical presence of the parties and qualified representatives from both sides." *Id.* The court explained that

> [t]he purpose of a settlement conference is to facilitate a settlement or to narrow the disparity between the parties by the candid input of a neutral, disinterested judicial officer. Settling cases prior to the filing and resolution of dispositive motions benefits the court and the parties by reaching a just, speedy and inexpensive determination of an action consistent with [Federal Rule of Civil Procedure 1]. If a settlement is possible, it is imperative that both plaintiff and defendant arrive at a settlement conference with an open mind and a genuine willingness to meaningfully discuss the strengths and weaknesses of each party's case.

*Id.* at 485. The *Pitman* court found that the defendant's actions did not comport with these principles and that the defendant attended the settlement conference in bad faith because it brought a representative to the conference "with limited or capped settlement authority who was likely unable to make an objective evaluation of the disputed issues and the true value of the case." *Id.* at 485–86. The court reached this ruling despite the fact that the *appropriate* representative for the defendant was telephonically available during the conference. *Id.* at 486. The court reasoned that, had the appropriate representative been physically present, "she could have altered her view of the case during the settlement conference to reach a settlement, if appropriate." *Id.*

The Court finds *Pitman* analogous to the present case. Mr. Ruyle—the only Taronis representative at the mediation—did not have full and complete settlement authority. Rather, he only had authority to negotiate and make settlement offers that fell within a pre-set framework of settlement terms. If Plaintiff accepted an offer from him, he was unable to finalize the settlement because Taronis could only do so upon a formal Board vote.

3

Likewise, Mr. Ruyle himself lacked any authority whatsoever to accept or approve any offer that Plaintiff made to Defendant—even if the offer fell within the pre-set framework—because, again, the Board was required to hold a formal vote. Given these clear limitations, it cannot be said that Mr. Ruyle had anything close to "full and complete settlement authority."

Defendant argues that it nonetheless made "multiple monetary offers to Plaintiff" during the mediation and that this sufficed to demonstrate Defendant's good-faith participation. (Doc. 43 at 3). This argument falls flat and misses the entire point of holding a settlement conference. A settlement conference is not just a strict exchange of monetary offers. If that were the case, there would be no need for the parties to meet at a conference; monetary offers can be exchanged over email. Rather, the purpose of a settlement conference—as this Court noted in *Pitman*—is to allow the parties an opportunity to meet "with an open mind and a genuine willingness to meaningfully discuss the strengths and weaknesses of each party's case." *Pitman*, 216 F.R.D. at 485. Defendant's approach in this case—providing Mr. Ruyle with the parameters of settlement terms the Board would approve and sending only Mr. Ruyle to the conference to negotiate monetary offers in accordance with those parameters—was inflexible, decidedly *not* open-minded, and prevented any meaningful discussion from taking place. As Plaintiff puts it, Defendant had "nothing to contribute during mediation that could not have been handled via email without the expense of arranging the session, paying a mediator, preparing a mediation memorandum and exhibits, having a pre-mediation call with the mediator, and spending valuable time preparing for and attending the session." (Doc. 46 at 2).

Defendant additionally argues that the Board was sufficiently involved in the mediation process, regardless of its actual presence at the mediation. (Doc. 43 at 2–3). The parties go back and forth as to the extent of the Board's availability, when the various Board members became unavailable, how the different time zones at play affected the Board's availability, and how the timing of the mediator's proposal should be factored in. The Court is not here to resolve squabbles over time zones. The bottom line is simple: no

member of the Board—*i.e.*, the individuals with full and complete settlement authority—ever attended the mediation at any point. Regardless of what time zone the Board members were in, the Zoom format of the mediation should have made their attendance simple—they could have just joined the Zoom link. They failed to do so. Even better, if the parties had held the settlement conference *in person*—as this Court's CMO required (*see* Doc. 20 at 2)—and with all parties present and represented by individuals with *full and complete settlement authority*, there would not have been any issues with time zones and telephonic availability, and Defendant would not have had to concern itself with worries such as whether the mediator would provide her mediator's proposal before the close of business.

In sum, Defendant failed to attend the parties' mediation in good faith by failing to send a Taronis representative with full and complete settlement authority. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Sanctions (Doc. 42) is **granted**. Defendant shall be sanctioned pursuant to Rule 16(f) of the Federal Rules of Civil Procedure. Plaintiff is awarded the attorneys' fees and costs accrued in connection with the time and expense spent in preparing for and attending the mediation, as well as the fees and costs associated with preparing this Motion and Reply.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **no later than July 28, 2023**, to file an application for attorneys' fees and costs that provides the amount of fees and costs Plaintiff seeks. Plaintiff is advised that any application it files **must fully comply** with Federal Rule of Civil Procedure 54(d) and Local Rules of Civil Procedure 54.2 and 54.1. This includes compliance with LRCiv 54.2(d)(1), which requires the parties to meet and confer with the intent of resolving disputed issues related to the amount Defendant seeks and otherwise narrowing any potential disputes before raising them with the Court.

Dated this 5th day of July, 2023.

Honorable Steven P. Logan
United States District Judge